**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
No. 96-2740

|  |  |  |
|---|---|---|
| Stephen D. Summers, | * | |
| | * | |
| Petitioner, | * | Petition for Review of a Final |
| | * | Order from the National |
| v. | * | Transportation Safety Board. |
| | * | |
| David R. Hinson, Administrator, | * | |
| Federal Aviation Administration, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 14, 1997

Filed: August 8, 1997
_____

Before HANSEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and MELLOY,[1] District Judge.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Stephen D. Summers appeals a decision of the National Transportation Safety Board (the "Board") reversing an administrative law judge's (ALJ) holding, and upholding the FAA Administrator's order revoking his Airman Certificate because he falsified an application for a medical certificate. The Administrator held that

_____

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

Mr. Summers had responded untruthfully when he replied in the negative to two questions, one asking him whether he had "<u>ever</u> had ... [m]ental disorders of any sort" (emphasis in original), including depression, the other inquiring whether he had visited any health professionals for evaluation within the three years immediately preceding the application. It was undisputed that only two weeks before he completed his application Mr. Summers had been interviewed by Dr. Kenneth MacDonald, a clinical psychologist, at his lawyer's office and that Dr. MacDonald had later diagnosed him as suffering from depression with suicidal ideation. Mr. Summers testified before the ALJ that he did not know of this diagnosis until after he filled out his application, and Dr. MacDonald testified that he did not recall relaying the diagnosis to Mr. Summers before that time.

## I.

We note, first, that in order to be in violation of the relevant regulation, 14 C.F.R. § 67.20(a)(1), Mr. Summers would have had to have made a "fraudulent or intentionally false statement" on his application. The Board determined that Mr. Summers had indeed intentionally made a false statement because, contrary to Mr. Summers's testimony at the hearing before the ALJ, he had actually learned of Dr. MacDonald's diagnosis before he filled out his application.

Mr. Summers has two complaints about this finding. First of all, he says, it cannot stand under the standard of review applicable to an ALJ's factual findings that the Board has established for itself, a standard that requires it to accept a finding of fact unless the finding was clearly erroneous or there is a "compelling reason" to overturn it. See <u>Chirino v. National Transp. Safety Bd.</u>, 849 F.2d 1525, 1530 (D.C. Cir. 1988). The difficulty with this argument is that the ALJ never made a finding as to whether Mr. Summers knew about the results of his psychological evaluation at the relevant time; the ALJ simply concluded generally that the Administrator had failed to make out a case of intentional falsification, without any reference whatever to the testimony or the applicable law.

Mr. Summers's other objection to the Board's finding concerning his knowledge of Dr. MacDonald's diagnosis is that it is not supported by the record, because the Board's finding relied almost entirely on a letter that Mr. Summers wrote after this proceeding was begun, a letter intended to explain why he answered the question about mental disorders as he did. He said in the letter that he did not believe at the time that he filled out the application that he was suffering from a mental disorder, because he believed that his reaction to the stressful situations that he was then facing was entirely normal. Indeed, he said in the letter, "Dr. MacDonald has told me that I was reacting normally to these identifiable stressors." The Board seized on this last statement as evidence that Mr. Summers was aware of Dr. MacDonald's diagnosis at the relevant time.

We agree with Mr. Summers that this finding is not supported by substantial evidence. Our reading of the letter is that Dr. MacDonald had at some time subsequent to the application indicated to Mr. Summers that his reaction to his stressful situation was normal. While we suppose that the Board's reading is not an impossible one, we believe that it provides so weak an inference of Mr. Summers's knowledge that a finding based on it is not supported by substantial evidence. That finding therefore cannot stand. See 5 U.S.C. § 706(2)(E) and Owens v. National Transp. Safety Bd., 734 F.2d 396, 398 (8th Cir. 1984).

The ultimate issue, moreover, is not when Mr. Summers learned of Dr. MacDonald's diagnosis, because the question to which he stands accused of giving an intentionally false answer did not ask him if he had been diagnosed as having depression. It asked him instead if he had ever "had ... depression." We are unable to see how it can reasonably be said that Mr. Summers's statement that he had never suffered from depression was intentionally false unless he believed that he had in fact suffered from depression when he made it. But Mr. Summers testified that, when he answered the question, he did not believe that he had ever suffered from depression, and the Board never found against him on that point.

The Board's observation in its decision that "at the very least ... the respondent would have known ... that he had a problem with depression significant enough to require reporting" misses the mark. As we have said, the question to which Mr. Summers responded was not whether he had been diagnosed as having a mental disorder including depression, but whether he had had a mental disorder. The diagnosis is of course not irrelevant to this question, because the Board, if it had properly found that Mr. Summers knew of the diagnosis, might also have found that in the face of this knowledge Mr. Summers did not really believe that he had never suffered from depression. But the Board never made this last finding and was, as we have said, in any case, precluded from making it because its predicate, Mr. Summers's knowledge, finds insufficient support in the record.

The record on this point therefore lacks a finding on a crucial point, namely, whether Mr. Summers subjectively believed that he had ever suffered from a mental disorder, and the Board's holding that he falsified his application in this respect therefore cannot stand. If the FAA wishes to know whether pilots licensed by it have ever been diagnosed as suffering from a mental disorder, a datum of manifest relevance, it can ask a more specific question on its application form that elicits that information. As the question is presently worded, the Board must find that an applicant harbored a subjective intention to deceive as to the fact of a mental disorder before it can impose the sanctions appropriate to a violation of 14 C.F.R. § 67.20(a)(1). And this is a conclusion for which there is insufficient proof in the record.

## II.

The second question to which the Board held that Mr. Summers gave an intentionally false answer, however, poses a larger difficulty for him. He admits that Dr. MacDonald evaluated him in connection with a motion for a continuance in a criminal case pending against him, a motion that expressly contended that he was "suffering from severe depression" and was therefore "unfit ... to testify on his behalf and fully cooperate with his attorneys in preparing a defense." The application asked

-4-

Mr. Summers to "[l]ist all visits in the last 3 years to a ... psychologist ... for examination, or medical/mental evaluation," and Mr. Summers listed none. The ALJ made no finding at all with respect to this aspect of the Administrator's order, and the Board noted only in a footnote that the failure to report this visit "was not inadvertent." We take it that the Board was saying that it believed that Mr. Summers had answered this question in an intentionally false way.

Mr. Summers's excuse for his answer to this question is that the evaluation that took place in his attorney's office was only "counseling" and that under the instructions contained in his application only certain kinds of counseling that are not relevant here had to be revealed in answer to this question. As an objective matter, however, we do not think that what occurred in the lawyer's office could be fairly characterized as counseling: Mr. Summers was evaluated and tested by a clinical psychologist to determine whether he was fit to participate in a trial. This cannot by any stretch of the imagination be called counseling, and, although we do not understand Mr. Summers to be making the argument, we do not believe that he could have subjectively believed that the interview with the psychologist was merely counseling. In this respect, therefore, we think that the Board's conclusion that Mr. Summers falsified his application finds ample support in the record and is not contrary to law.

## III.

While the Board's decision to uphold the Administrator's order revoking Mr. Summers's Airman Certificate cannot be supported by the Board's conclusion that he falsified his application when he said that he had never suffered from depression, its decision is supportable on the ground that Mr. Summers was intentionally untruthful when he failed to reveal that Dr. MacDonald had evaluated him. Because we are confident that the Board would have upheld the Administrator's decision on this ground alone, we affirm its order.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.